IN THE UNITED STATES DISTRICT COURT

NORTHERN DIVISION

| | |
|---|---|
| TYRESE SMITH,<br><br>    Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br><br><br>Civil Case No. 2:06-CV-873 TC<br><br>Criminal Case No. 2:02-CR-289 TC |

  Mr. Tyrese Sharod Smith has filed a *pro se* motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Mr. Smith contends that he was denied effective assistance of counsel. Specifically, Mr. Smith points to four alleged errors by his attorney: (1) failure to investigate and subpoena witnesses, (2) refusal to allow Mr. Smith to testify at trial, (3) failure to contest the interstate commerce element of the crime, and (4) failure to challenge the prosecutor's statement in closing argument that Mr. Smith and the criminal enterprise were identical.

  The court was able to decide all issues except the second issue on the record and the pleadings. On May 3, 2007, the court held an evidentiary hearing on the second issue. Mr. Smith was represented by counsel and testified.

  Because Mr. Smith has failed to show that his counsel was ineffective following the test found in Strickland v. Washington, 466 U.S. 668 (1984), his motion is denied.

**BACKGROUND**

A jury found Mr. Smith guilty of conspiracy to conduct the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d), murder in aid of racketeering activity in violation of 18 U.S.C. § 1959(a), and using a firearm in violation of 18 U.S.C. § 924(c). The charges against Mr. Smith all stem from his leadership of a Salt Lake City street gang, the King Mafia Disciples ("KMD").

The court sentenced Mr. Smith to two life terms plus ten years imprisonment. Mr. Smith appealed and the Tenth Circuit Court of Appeals affirmed his conviction. United States v. Smith, 413 F.3d 1253 (10th Cir. 2005).

## ANALYSIS

To demonstrate ineffective assistance of counsel, "a petitioner must establish both that his attorney's representation was deficient and that he was prejudiced by that deficiency." James v. Gibson, 211 F.3d 543, 555 (10th Cir. 2000), cert. denied, 531 U.S. 1128 (2001) (citing Strickland, 466 U.S. at 687). The standard applies to sentencing proceedings and plea hearings as well as at trial. United States v. Glover, 97 F.3d 1345, 1349 (10th Cir. 1996). To succeed on the deficiency prong, a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." James, 211 F.3d at 555 (citing Strickland, 466 U. S. at 689). "Judicial scrutiny of counsel's performance is highly deferential." Id. To succeed on the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. There is a strong presumption that counsel provided effective assistance, and a § 2255 petitioner has the burden of proof to overcome that presumption. James, 211 F.3d at 555.

The court now turns to the claims raised by Mr. Smith.

1. Failure to Investigate

Mr. Smith argues that his trial counsel was ineffective when she failed to call two

witnesses, Elizabeth Chacon and Lieutenant Watkins.

Elizabeth Chacon is the sister of Melissa Chacon, who testified for the government. Mr. Smith has not submitted an affidavit from Elizabeth Chacon but argues that Ms. Chacon would have testified that Melissa Chacon told her on numerous occasions that Mr. Smith had nothing to do with the murder that was the basis of the murder in aid of racketeering activity charge. But when the court considers the testimony of Melissa Chacon as well as the testimony of other KMD members who testified, the court concludes that Mr. Smith has not shown prejudice from his attorney's failure to call the two witnesses.

Melissa Chacon had been Mr. Smith's girlfriend and was the mother of his child. She was deeply involved in the business of the KMD. Ms. Chacon testified at length about Mr. Smith's role as the leader of KMD. (May 7, 2003 Trial Tr. 153-248; May 8, 2003 Trial Tr. 4-63.) Ms. Chacon described how Mr. Smith, who was in prison on another charge, ordered the murder and gave her instructions to pass on to two other KMD members who were to commit the murder. Not only did Ms. Chacon testify about the murder, she authenticated tape-recorded conversations with Mr. Smith, while he was in prison, in which the murder was discussed.

Ms. Chacon was not the only witness called by the government who was a member or affiliated with KMD. David Pantelakis, a former member of KMD, gave detailed testimony about KMD, Mr. Smith's role as the leader of KMD and the violence that was an integral part of KMD. (May 9, 2003 Trial Tr. 10-135.) Robert Land, another former member of KMD, testified as a government witness. (May 6, 2003 Trial Tr. 166-240.) Mr. Land's testimony was similar to Mr. Pantelakis's testimony. He described the structure and workings of KMD, Mr. Smith's role as leader and the general violence of KMD. Mr. Land testified that Mr. Smith, while Mr. Smith was in prison, had ordered him to kill Melissa Chacon because she had testified against Mr. Smith. When Mr. Land failed to carry out Mr. Smith's order, his rank in KMD was lowered.

The second witness that Mr. Smith claims his attorney failed to call is a "Lieutenant

Watkins." Mr. Smith has failed to submit any evidence regarding the substance of Lieutenant Watkins' testimony. But, according to Mr. Smith, he was a lieutenant at the prison where Mr. Smith was incarcerated. Mr. Smith maintains that had Lieutenant Watkins testified, he would have substantiated Mr. Smith's defense that Mr. Smith was no longer the head of KMD during the period of the conspiracy.

It is doubtful in view of the lack of evidence to support Mr. Smith's arguments that Mr. Smith could establish that his trial counsel's failure to call Elizabeth Chacon and Lieutenant Watkiss was deficient under <u>Strickland</u>. But the court need not reach that issue because Mr. Smith has failed to prove prejudice.

The Tenth Circuit has instructed that "[i]f we determine petitioner has failed to prove prejudice, we need not determine whether counsel's performance was constitutionally deficient." <u>Lucero v. Kerby</u>, 133 F.3d 1299, 1323 (10th Cir. 1998).

Even assuming that Elizabeth Chacon would have testified as Mr. Smith claims, her testimony would have had little impact. The government could (and probably would) argue that it was understandable why Melissa Chacon would not want her sister to know that Mr. Smith had directed her to order a murder. Such information would incriminate not only Mr. Smith but Melissa Chacon herself. Furthermore, Melissa Chacon testified at length about the murder and her testimony was supported by the recorded conversations the jury heard.

Similarly, assuming Lieutenant Watkins testified that, in his opinion, Mr. Smith was no longer the leader of KMD, this evidence would not be persuasive when compared to the testimony of Melissa Chacon and Robert Land who testified that Mr. Smith directed the operations of KMD even while he was in custody. Moreover, the recorded conversations left little doubt that Mr. Smith remained the leader of KMD while he was incarcerated.

    2.    <u>Mr. Smith's Right to Testify</u>

In his Motion, Mr. Smith claims that his counsel refused to let him testify. According to

4

Mr. Smith, he "did not voluntarily choose not to testify but instead was coerced into silence by his counsel's constant reminder that he was free to relieve him [sic][1] and get another attorney." (Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence 10.)  At the May 3, 2007 Hearing, Mr. Smith testified that:

> me and Deirdre [Deirdre Gorman, Mr. Smith's attorney] . . . weren't getting along.  I wasn't speaking to her at all, only if I had to.  And when I told her that I wanted to testify, she said it would undermine her trial strategy because she was stipulating to the homicide on the predicate acts, and I didn't want to stipulate to it.

(May 3, 2007 Evidentiary Hr'g Tr. 28.)

The court had given Mr. Smith permission to file his own motions.  Throughout the trial, Mr. Smith had filed motions and had spoken directly to the court.  But at the May 3, 2007 Hearing, he acknowledged that despite his many direct communications with the court, he did not tell the court that he wanted to testify.  According to Mr. Smith, he didn't tell the court because "[s]he [Ms. Gorman] was in control, and it was an ambush to me."  (Id. at 30.)

Mr. Smith also did not tell his other attorney, Catherine Conklin, that he wanted to testify.  (Id. at 31.)

The record simply does not support Mr. Smith's assertion that his attorney denied him the right to testify.  Although his attorney might have told him that if he testified, it would conflict with her trial strategy, that does not convince the court that Mr. Smith was actually denied his right to testify.  At most, his attorney was advising him and attempting to carry out a strategy that she believed would be effective.

Furthermore, Mr. Smith's argument that he was afraid to argue with his attorney about his testimony is not convincing.  Before trial, during trial, and after trial, Mr. Smith clearly asserted, in writing and orally, that he disagreed with choices that his attorney made.  That was

---

[1] Mr. Smith's counsel was a woman.

why the court allowed Mr. Smith to file his own motions, which he did.  And significantly, Mr. Smith never informed the court that he wanted to testify despite his frequent communication with the court.

For those reasons, the court concludes that his attorney did not deny him the right to testify and Mr. Smith has failed to meet the first prong of Strickland.

Moreover, Mr. Smith has not shown that he was prejudiced by his failure to testify.  The testimony he claims he wanted to give has little or no bearing on Mr. Smith's guilt or innocence.  In his Motion, Mr. Smith asserts that his testimony would have related to the KMD "Bible" and who were the early members of KMD.  And at the May 3, 2007 Hearing, Mr. Smith testified that he wanted to testify to rebut a prejudicial answer of government witness David Pantelakis.  But Mr. Smith did not explain what the question to Mr. Pantelakis was nor what was Mr. Pantelakis's answer.

None of the testimony that Mr. Smith claims he was denied the right to give was significant, particularly when weighed against the overwhelming evidence of Mr. Smith's guilt.

Accordingly, Mr. Smith has failed to meet the second prong of Strickland.

3.    Stipulation to the Interstate Commerce Element of the Crime

Mr. Smith argues that his attorney was ineffective by waiving his right to challenge the interstate commerce element of the crime.  He does not explain the circumstances of the alleged waiver.  But in any event, the Tenth Circuit's opinion denying Mr. Smith's appeal has settled this issue.  Mr. Smith argued on appeal that the court's instruction concerning interstate commerce was wrong and that the government had not proved the requisite effect on interstate commerce.  The court rejected his arguments, holding that the court's refusal to instruct the jury that the government must prove a substantial effect on interstate commerce was not plain error and that the government's evidence satisfied the interstate commerce requirement.  See Smith, 413 F.3d at 1274-75.

Accordingly, Mr. Smith has failed to show either that his attorney's performance was defective or that Mr. Smith suffered prejudice as a result of the waiver.

4. <u>The Government's Statements that Mr. Smith and the Criminal Enterprise were the Same</u>

Mr. Smith's final claim is that his attorney was ineffective because she failed to object when, in closing argument, the government attorney argued that Mr. Smith was the criminal enterprise. Mr. Smith does not indicate where in the closing argument this statement was made.

The record does not support Mr. Smith's argument. The government's theory, which the government's attorney repeated in closing argument, was that the street gang KMD was the criminal enterprise. For example, the prosecutor explained to the jury that "[t]he government must first prove beyond a reasonable doubt that an enterprise existed, as alleged in count one of the second superseding indictment, through a pattern of racketeering activity. And of course when we're talking about an enterprise, we're talking about K.M.D." (May 14, 2003 Trial (Closing Arguments) Tr. 7.) He went on to explain that the jury must find that:

> K.M.D. existed during the period of time or substantially the period of time that's charged in the indictment. And the indictment charges generally a period of time of 1992 to 2002, ten year, eleven year period of time.
>
> You're going to have to make specific findings about the nature of that enterprise, not just that K.M.D. existed and that it was a boys' club or a culture club, but that it existed primarily for the purpose of engaging in a pattern of unlawful activity. Basically that this is a criminal enterprise. That one of its primary functions was to commit crime.

(<u>Id.</u> at 7-8.)

The prosecutor told the jury that the court would instruct it that "an enterprise includes a group of people who have associated together for a common purpose." (<u>Id.</u> at 8.) He described that group as a "core group" of five people, including Mr. Smith, who began KMD while they were incarcerated in a youth detention center. (<u>Id.</u>)

7

The court has found in the transcript of the prosecutor's closing a statement made by the prosecutor when, after beginning his closing argument by reciting the KMD creed, the prosecutor said:

> Members of the jury, that simple poem embodies the philosophy, the theology, the structure and the foundation of the King Mafia Disciples. It also embodies the philosophy and the theology of the Defendant in this case, Tyrese Sharod Smith, also known as King Seagram, because insofar as this case is concerned, Tyrese Smith and King Mafia Disciples, who you heard referred to throughout this case as K.M.D., are one and the same.

(Id. at 5.)

Later in his closing, when the prosecutor was explaining the elements of the Racketeering charge, he told the jury:

> The third element of Count One is that Mr. Smith associated with–was associated with or employed by the enterprise. And I will submit to you that if there's anybody in this group that doesn't think the government has proven that, then I apologize for having wasted so much of your time. But I don't think I have to worry about making that apology because, as I indicated when I first began addressing you this morning, Mr. Smith was and is K.M.D. They are literally synonymous. He's King Seagram.

(Id. at 43.)

If those are the remarks Mr. Smith is pointing to, his attorney was wise not to object. The court would have overruled the objection. When seen in context, there is little doubt that the prosecutor was simply stressing that Mr. Smith was the leader of KMD. And, in any event, the prosecutor made clear to the jury that the government's theory was that the criminal enterprise was KMD.

Moreover, the Tenth Circuit's decision denying Mr. Smith's appeal shows that Mr. Smith cannot show prejudice under Strickland. Mr. Smith argued that the government's evidence was not sufficient to establish the racketeering charge. The appeals court discussed each element that the government was required to prove, including the element that Mr. Smith participated in an

8

enterprise.  Smith, 413 F.3d at 1266-68.  The Tenth Circuit rejected Mr. Smith's contention, noting that the government had offered a "wealth of evidence" that KMD was a criminal enterprise and holding that "we easily conclude that there was sufficient evidence to prove that KMD had an existence as 'an entity separate and apart from the pattern of activity in which it engages.'"  Id. at 1268 (internal citation omitted).  So, even if Mr. Smith's attorney's performance was deficient because she failed to object to the prosecutor's statements, it is clear from the overwhelming evidence that the criminal enterprise was KMD, and Mr. Smith suffered no prejudice.

    For the above reasons, Mr. Smith's Motion is DENIED and his petition is DISMISSED.

    DATED this 19th day of June, 2007.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge

9